1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                   **CENTRAL DISTRICT OF CALIFORNIA**

10

11   ROBERT THEYS,                    )      NO. CV 06-00737 SS
                                      )
12              Plaintiff,            )
                                      )
13        v.                          )      **MEMORANDUM DECISION AND ORDER**
                                      )
14   JO ANNE B. BARNHART,             )
     Commissioner of the Social       )
15   Security Administration,         )
                                      )
16              Defendant.            )
     _____)

17

18                        **INTRODUCTION**

19

20       Plaintiff Robert W. Theys ("Plaintiff") filed this action on

21   February 9, 2006, seeking to overturn the decision of the

22   Commissioner of the Social Security Administration (hereinafter the

23   "Commissioner" or the "Agency") denying his application for

24   Supplemental Security Income and Disability Insurance benefits.

25   Alternatively, he asks for a remand.  The parties have consented,

26   pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the

27   undersigned United States Magistrate Judge.

28

Pursuant to the Court's Case Management Order, the parties filed a joint stipulation ("Jt. Stip.") on December 22, 2006. For the reasons stated below, the decision of the Commissioner is REVERSED and the case is REMANDED for further proceedings.

**PROCEDURAL HISTORY**

On May 7, 2003, Plaintiff filed an application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). (AR 50-52). Plaintiff alleged that he became disabled on October 2, 2002 due to chronic fatigue, hepatitis C, severe anxiety and depression, panic attacks, nausea, a "general sick feeling," and duodenitis. (AR 50, 61)

After Plaintiff's claims were denied initially and on reconsideration, he requested a hearing before an administrative law judge ("ALJ"). (AR 31-34, 36-40, 41). On April 12, 2005, ALJ Cynthia A. Josserand held an administrative hearing. (AR 46). Plaintiff appeared with counsel and testified. (AR 319-48). The ALJ also heard testimony from vocational expert June Hagen. (AR 319, 342-46). On May 21, 2005, the ALJ issued a decision denying benefits. (AR 17-26). Plaintiff sought review before the Appeals Council, which affirmed the decision on December 17, 2005, making ALJ Josserand's decision the final decision of the Agency. (AR 5-7). Plaintiff filed the instant Complaint on February 9, 2006.

**FACTUAL BACKGROUND**

Plaintiff was born on February 21, 1962, and was 43 years old at the time of the hearing. (AR 50, 323). Plaintiff had a tenth-grade education, and received a certificate in arc welding. (AR 323). Plaintiff's prior work history included work as a welder, exterminator, and carpenter. (AR 323-26).

**A.   Relevant Medical History**

In his application for benefits, Plaintiff claimed that he was disabled due to chronic fatigue, hepatitis C, severe anxiety and depression, panic attacks, and stomach conditions. (AR 61). Plaintiff was diagnosed with hepatitis C in 2002, although he was infected with the virus as early as 1985 to 1987. (AR 176). Plaintiff sought treatment from a gastroenterologist for acid reflux, nausea, diarrhea, and constipation. (AR 176, 180). He also had a history of hiatal hernia and duodenitis. (AR 231). Prior to his alleged onset date, Plaintiff had abused cocaine and alcohol. (AR 330-31). Plaintiff had experienced seizures in the past, but attributed them to his drug and alcohol abuse, and had not suffered any seizures since discontinuing drug and alcohol use in January 2002. (AR 331).

Plaintiff also had a history of depression and anxiety. (AR 231). He had tried to alleviate the problem with medications, including Zoloft, Effexor XR, Lexapro, Paxil CR, and Klonopin PRN. (AR 231, 333). Plaintiff claimed that his lifestyle was affected

by panic attacks, brought on particularly by contact with people, but that he had found some relief with Xanax and dietary changes. (AR 114-16, 333-35).  Plaintiff also complained of insomnia and fatigue.  (AR 112, 116, 175, 231, 238).

B.   **Relevant State Agency Physician Evaluations**

On October 4, 2003, Plaintiff was examined by state agency psychiatrist Norma R. Aguilar, M.D.  (AR 193-96).  Plaintiff reported to Dr. Aguilar that he suffered from anxiety, panic attacks and fatigue.  (AR 193).  He also reported suicidal thoughts.  (AR 194).  Dr. Aguilar's evaluation noted that Plaintiff had a Global Assessment of Functioning ("GAF") score of 62.  (AR 195).  She concluded that Plaintiff had the ability to follow and understand simple and complex instructions, and to interact with others.  (AR 195).  Dr. Aguilar also noted, however, that Plaintiff would have mild difficulty responding to changes and maintaining persistence and pace in a normal workplace setting.  (AR 195).

A Psychiatric Review Technique form was completed by state agency consulting physician Brian S. Taylor, M.D.  (AR 206-19). Dr. Taylor concluded that Plaintiff suffered from a depressive affective disorder, substance abuse disorders (in remission), anxiety, and recurrent severe panic attacks.  (AR 206, 209, 211, 214).  Evaluating Plaintiff's functional limitations, Dr. Taylor concluded that Plaintiff had mild limitations in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace.  (AR 216).

4

**C.**   **Hearing Testimony**

Upon questioning by the ALJ, Plaintiff testified about his work history, and that when he stopped working in October 2002, his work was affected by chronic fatigue, anxiety, panic attacks, and nausea.  (AR 321-30).  He testified that he was taking Xanax to control his panic attacks, and that he had not had a panic attack in the preceding six months.  (AR 330, 332).  Plaintiff testified that he was unsure whether his fatigue was caused by hepatitis C or was a symptom of depression.  (AR 333).  He had tried certain antidepressant medications, but had discontinued use because they caused insomnia and anxiety.  (AR 333).

Plaintiff further testified that he was taking Nexium for acid reflux.  (AR 333).  He had been prescribed interferon treatment for hepatitis C, but had not begun treatment because the side effects would be too severe given his condition, including nausea and fatigue.  (AR 333-34).

Plaintiff testified that he did cleaning and home improvement work while at home.  (AR 334).  He testified that he tried to participate in activities with his teenage children as much as possible.  (AR 335).  Plaintiff testified that he tried to get outside every day and to stay active because it made him feel better.  (AR 337).

Upon examination by his counsel, Plaintiff testified about the job he last held.  He testified that he was given an accommodation

by a friend who owned a business. (AR 338). His friend would deliver carpentry work to him at his home and give him additional time to complete it. (AR 338). Plaintiff testified that while doing this work at home, he would get very tired and needed to take breaks for naps. (AR 338). In response to the ALJ's questions regarding Plaintiff's need for naps, Plaintiff testified that he gets about six hours sleep per night and normally takes two naps of one-half to two hours each daily. (AR 339).

At the hearing, a vocational expert testified that Plaintiff's prior work in exterminating and carpentry was skilled and at a medium exertional level. (AR 342-44). The vocational expert testified that the work he performed for his friend who delivered carpentry work to him was a special accommodation, and that work did not exist in significant numbers in the local or national economies. (AR 344). In response to a question from Plaintiff's counsel, the vocational expert testified that a person who needed to take naps during the day as Plaintiff had described would not be able to perform any work that existed in significant numbers in the local or national economies. (AR 345). She also testified that a hypothetical individual who had to work "at his or her own pace" would not be able to work in any unskilled jobs available in significant numbers. (AR 346).

The ALJ presented the following hypothetical to the vocational expert:

Assuming we have an individual of the [Plaintiff's] age,
education and vocational background, who could perform
light work, a full range of light work activities, would
such a person, with the [Plaintiff's] background, have
transferrable skills to light work?

(AR 345).  The vocational expert testified that Plaintiff's skills would not be transferrable.  (AR 345).  She went on, however, to testify that such a person would be able to perform light unskilled jobs such as cleaner or sales attendant.  (AR 345-46).

## THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him from engaging in substantial gainful activity[1] and that is expected to result in death or to last for a continuous period of at least twelve months.  Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)).  The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

---

[1] Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done or intended to be done for pay or profit.  20 C.F.R. §§ 404.1510, 416.910.

7

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

(3) Does the claimant's impairment meet or equal one of list of specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.

(4) Is the claimant capable of performing his past work? If so, the claimant is found not disabled. If not, proceed to step five.

(5) Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett); 20 C.F.R. §§ 404.1520, 416.920.

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.

8

1   Bustamante, 262 F.3d at 953-54 (citing Tackett).  Additionally, the

2   ALJ has an affirmative duty to assist the claimant in developing

3   the record at every step of the inquiry.  Bustamante, 262 F.3d at

4   954.   If, at step four, the claimant meets his burden of

5   establishing an inability to perform past work, the Commissioner

6   must show that the claimant can perform some other work that exists

7   in "significant numbers" in the national economy, taking into

8   account the claimant's residual functional capacity,[2] age,

9   education, and work experience.   Tackett, 180 F.3d at 1098, 1100;

10  Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(f)(1),

11  416.920(f)(1).  The Commissioner may do so by the testimony of a

12  vocational expert or by reference to the Medical-Vocational

13  Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2

14  (commonly known as "the Grids").  Osenbrock v. Apfel, 240 F.3d

15  1157, 1162 (9th Cir. 2001) (citing Tackett).  When a claimant has

16  both exertional (strength-related) and nonexertional limitations,

17  the Grids are inapplicable and the ALJ must take the testimony of

18  a vocational expert.  Moore v. Apfel, 216 F.3d 864, 869 (9th Cir.

19  2000) (citing Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir.

20  1988)).

21

22

23

24

25

26      [2]   "[R]esidual functional capacity is the most [an

27  individual] can still do despite [his] limitations," and represents

    an assessment "based on all the relevant evidence."  20 C.F.R. §§

28  404.1545(a), 416.945(a).

**THE ALJ'S DECISION**

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful employment since his alleged October 2, 2002 onset date.  (AR 21, 25).  At step two, the ALJ found that Plaintiff had no severe mental impairment, but did suffer "severe chronic mild active Hepatitis C and a history of seizures," and concluded that he had "severe physical impairments."  (AR 21-22, 25).  At step three, the ALJ found that Plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of any impairment listed at  20 C.F.R. Part 404, Subpart P, Appendix 1.  (AR 22-23, 25).

The ALJ adopted a residual functional capacity for Plaintiff limiting him only by inability to "lift and/or carry more than 10 pounds frequently or more than 20 pounds occasionally; climb ramps and stairs more than occasionally; climb ladders, ropes, and scaffolds at all; and work around hazards such as dangerous moving machinery and unprotected heights."  (AR 23, 25).  Based upon this assessment, the ALJ concluded at step four that Plaintiff was unable to perform his past relevant work.  (AR 24, 25).

At step five, however, and based upon the testimony of the vocational expert, the ALJ concluded that Plaintiff would be able to perform unskilled, light exertional-level jobs available in significant numbers in the local and national economies, including cleaner-housekeeping and sales attendant.  (AR 24-26). Accordingly, the ALJ concluded that Plaintiff was not under a

"disability" within the meaning of the Social Security act at any time from his onset date to the date of her decision.   (AR 26).

### STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole.  <u>Aukland v. Massanari</u>, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing <u>Tackett</u>, 180 F.3d at 1097); <u>Smolen v. Chater</u>, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing <u>Fair v. Bowen</u>, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than a preponderance." <u>Reddick</u>, 157 F.3d at 720 (citing <u>Jamerson v. Chater</u>, 112 F.3d 1064, 1066 (9th Cir. 1997)).  It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." <u>Id.</u> (citing <u>Jamerson</u>, 112 F.3d at 1066; <u>Smolen</u>, 80 F.3d at 1279).  To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" <u>Aukland</u>, 257 F.3d at 1035 (citing <u>Penny v. Sullivan</u>, 2 F.3d 953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. <u>Reddick</u>, 157 F.3d at 720-21 (citing <u>Flaten v. Sec'y</u>, 44 F.3d 1453, 1457 (9th Cir. 1995)).

1

## DISCUSSION

2

3        Plaintiff complains that the ALJ erred in failing to consider
4   Plaintiff's "non-severe" mental impairments in determining
5   Plaintiff's residual functional capacity. (Jt. Stip. at 5).
6   Plaintiff argues that this error also resulted in the ALJ's
7   presentation of an incomplete hypothetical to the vocational
8   expert, resulting in testimony of insufficient evidentiary value.
9   (Jt. Stip. at 8-9). The Court agrees.

10

11        A claimant's residual functional capacity reflects what he can
12   still do despite his physical, mental, nonexertional, and other
13   limitations. 20 C.F.R. §§ 404.1545, 416.945. The Agency examines
14   a claimant's residual functional capacity and the physical and
15   mental demands of his past relevant work at step four of the
16   sequential process. 20 C.F.R. §§ 404.1520(e), 416.920(e). See
17   also Pinto v. Massanari, 249 F.3d 840, 844-45 (9th Cir. 2001). The
18   residual functional capacity must include the individual's
19   functional limitations or restrictions and assess his work-related
20   abilities on a function-by-function basis, including the functions
21   in paragraphs (b), (c), and (d) of 20 C.F.R. §§ 404.1545 and
22   416.945. As Plaintiff correctly states, in determining a
23   claimant's residual functional capacity, the ALJ must consider the
24   limiting effects of all of his impairments, even those that the ALJ
25   found to be "not severe." 20 C.F.R. §§ 404.1545(e), 416.945(e);
26   SSR 96-8p, 1996 WL 374184 at *5.

27

28

At step two of the sequential process, the ALJ concluded that Plaintiff had "no severe mental impairment." (AR 22). However, the ALJ did note, based upon the findings of examining and consulting state agency physicians, that Plaintiff would have "mild difficulty" responding to changes in the normal workplace setting, maintaining persistence and pace, carrying out daily activities, and maintaining social functioning. (AR 22). The ALJ also noted that Plaintiff had a GAF score "only of 62," placing him in a range characterized by "the presence only of some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social or occupational functioning . . . ." (AR 22). While the findings of only mild limitations led the ALJ to conclude that Plaintiff's mental impairments were "not severe" at step two, it is significant that the ALJ did acknowledge such limitations.

Having determined that Plaintiff's physical impairments were "severe," but that they did not meet or equal a listing, at step four, the ALJ adopted a residual functional capacity for Plaintiff that was more restrictive than the assessment completed by the state agency consultant. (AR 198-205, 23). In adopting an assessment of residual functional capacity, the ALJ expressly considered, but rejected as not credible, Plaintiff's complaints of disabling fatigue. (AR 24, 25). However, despite having previously concluded that Plaintiff had mild limitations resulting from his mental impairments, there is no indication that the ALJ took those limitations into account in formulating her residual functional capacity assessment.

1    The ALJ's failure to consider the acknowledged mental
2 limitations constitutes an error of law.  A determination that a
3 claimant's mental impairments are not "severe" does not decide the
4 question of whether the impairments are considered when assessing
5 residual functional capacity.  "In assessing RFC, the adjudicator
6 must consider limitations and restrictions imposed by all of an
7 individual's impairments, even those that are not 'severe.' While
8 a 'not severe' impairment(s) standing alone may not significantly
9 limit an individual's ability to do basic work activities, it may
10 – when considered with limitations or restrictions due to other
11 impairments – be critical to the outcome of a claim."  SSR 96-8p,
12 1996 WL 374184 at *5.  See also 20 C.F.R. §§ 404.1545(a)(2),
13 416.945(a)(2) ("We will consider all of your medically determinable
14 impairments of which we are aware, including your medically
15 determinable impairments that are not 'severe' . . . when we assess
16 your residual functional capacity."); Celaya v. Halter, 332 F.3d
17 1177, 1181-82 (9th Cir. 2003).[3]

18

19    Moreover, the ALJ's failure to incorporate Plaintiff's mental
20 impairments in her residual functional capacity assessment calls
21 into question the vocational expert testimony upon which she based
22 her step five analysis of jobs Plaintiff may be able to perform.
23 See Flores v. Shalala, 49 F.3d 562, 570-71 (9th Cir. 1995) ("[I]n
24 meeting her burden of showing the claimant's ability to work, the

25

26    [3]   The Court also notes that it appears that the ALJ failed
to   follow   the   special   technique,  prescribed  by  20  C.F.R.  §§
27 404.1520a and 416.920a for evaluating mental impairments.    On
remand, the ALJ should follow the steps required by the applicable
28 regulations.

Secretary may only rely upon the vocational expert's testimony if the questions posed by the ALJ include all of the claimant's functional limitations, both physical and mental."). An ALJ's "[h]ypothetical questions posed to the vocational expert must set out *all* the limitations and restrictions of the particular claimant . . . ." Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988) (emphasis in original). See also Thomas v. Barnhart, 278 F.3d 947, 956 (9th Cir. 2002) (cautioning that, "[i]n order for the testimony of a vocational expert to be considered reliable, the hypothetical posed must include all of the claimant's functional limitations, both physical and mental[,] supported by the record") (citation and internal quotation marks omitted). If the hypothetical question that the ALJ poses to the vocational expert "does not reflect all the claimant's limitations, . . . the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1990).

ALJ Josserand's hypothetical question to the vocational expert did not reflect any of the "mild limitations" reflected in her decision. The ALJ asked the vocational expert only to "[a]ssum[e] we have an individual of the [Plaintiff's] age, education and vocational background, who could perform light work, a full range of light work activities . . . ." (AR 345). Because the hypothetical did not reflect all Plaintiffs limitations, including the "not severe" mental limitations acknowledged by the ALJ, the vocational expert's testimony is called into question, and the

1  Court cannot conclude that the ALJ's findings at step five were

2  supported by substantial evidence.

3

4                              **CONCLUSION**

5

6      For the reasons set forth above, IT IS ORDERED that Judgment

7  be entered REVERSING the decision of the Commissioner and REMANDING

8  Plaintiff's case for further proceedings consistent with this

9  decision.

10

11  DATED: January 31, 2007

12

13                          _____/s/_____

14                          SUZANNE H. SEGAL
                            UNITED STATES MAGISTRATE JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28